KNOX v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   January 16, 1903.)

1. COMMISSIONER OF DEEDS—EMPLOYMENT BY CITY—FEES—WAIVER—EVIDENCE—
    SUFFICIENCY.

>    In an action against a city to recover fees for services as commissioner
> of deeds, it appeared that plaintiff was a register clerk in the office
> of the commissioner of jurors, and that he obtained his appointment
> as commissioner of deeds prior thereto.  Plaintiff testified that the
> services for which he sought to recover were acknowledging the returns
> of service of subpœna servers who were employés in the same office;
> that he did not know whether he expected to be paid for the services
> or not, but that he was willing to take it if he could get it;  and that
> he never kept an account of the number of acknowledgments taken until
> one of the other employés began to do so, saying that "some day they
> might get their money."  He further testified that he never asked to
> have a bill for these fees certified, but "understood somebody was suing
> the city, and waited to see how they made out."  *Held*, that a finding
> that plaintiff had not waived his claim for fees was not supported by
> the evidence.

Appeal from trial term, New York county.

Action by Nicholas A. Knox against the city of New York.  From
a judgment for plaintiff, defendant appeals.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-
SON, INGRAHAM, and LAUGHLIN, JJ.

Chase Mellen, for appellant.
Alfred J. Talley, for respondent.

LAUGHLIN, J.   This is an action to recover fees for services
of plaintiff as commissioner of deeds.  The complaint alleges that
from the 6th day of March, 1895, to the 1st day of February, 1898,
the plaintiff, at the request of the commissioner of jurors of the
city and county of New York, took 2,543 affidavits as commissions
of deeds "in diverse cases of delinquent jurors, the reasonable and
legal charge for which is twelve cents for each affidavit," amount-
ing to $305.16, "which is now justly due and owing to the plain-
tiff."  These allegations were put in issue by the answer.  It is fur-
ther alleged in the fourth subdivision of the complaint that the
plaintiff's claim has been filed with the comptroller, that more than
30 days have elapsed since the filing thereof, and that the "said sum
is now due and justly owing to the plaintiff herein, no part of which
has been paid, although the same has been duly demanded."  These
allegations are admitted.  The defendant pleads the further de-
fense of waiver on the part of the palintiff of any right to compen-
sation.  On the trial the taking of 2,539 affidavits by the plaintiff
"at the request of his superiors" was admitted.  The plaintiff testified
that they were taken between the 25th day of March, 1896, and
the 1st day of February, 1898.  The claim was filed on the 12th
day of December, 1901.  Upon the trial, counsel for the defendant
conceded that, if it was liable at all, it was liable for the fees for
taking the 2,539 affidavits, and thereupon the court inquired,  "Is
your sole defense here a waiver?" to which the defendant's counsel

answered, "Yes; that is all." The defendant offered no evidence, but at the close of the case moved for a dismissal of the complaint on the ground that the plaintiff had failed to prove a cause of action, and that his own testimony showed a waiver of any right to compensation for such services. The motion was denied, and the defendant's counsel duly excepted. The court, in charging the jury, stated that it was conceded that these affidavits were taken by the plaintiff "at the request of the defendant, the city of New York, through its proper officers," and instructed the jury that the plaintiff was entitled to recover his fees therefor "unless you believe that he waived his claim against the city." No exception to this charge was taken by the defendant. The court then instructed the jury that the burden of establishing the defense of waiver was upon the city, and that the plaintiff was entitled to recover unless the defendant had satisfied them "by a preponderance of credible evidence that there was a waiver, or agreement to do the work for nothing."

The plaintiff was appointed register clerk in the office of the commissioner of jurors on the 12th or 15th day of March, 1895, and about a year thereafter he became chief clerk, which position he held until February, 1898. He received an annual salary from the city, and the affidavits were taken in the office of the commissioner of jurors, and during the time he held these respective positions. The plaintiff testified that about a year before entering the employ of the city he obtained the appointment as commissioner of deeds for the purpose of taking affidavits "to enroll people in the primaries," and that he never made a charge for affidavits thus taken to enroll people. Speaking generally, he said, "Probably I made one or two charges for my services, but generally I did it out of courtesy, and I didn't charge for it." He further testified that he paid the original charge for qualifying as commissioner of deeds and for all subsequent renewals out of his own funds; that six or seven months after he entered the employ of the city he was asked, "as a commissioner of deeds, * * * to acknowledge the subpœna servers,—what we called the 'return of service'"; that these subpœna servers were employés in the same office; that he was never paid "for any of these affidavits"; that he was not told when he entered the city's employ that any services would be required of him as commissioner of deeds, or that it was any part of his duty to take such affidavits; that he never had any conversation with the commissioner or deputy commissioner of jurors regarding compensation for these services; that prior to filing his claim he made no demand or request for payment for such fees upon his superiors or any officer of the city; that sometimes the commissioner asked him to take the affidavits, and at other times the deputy commissioner; that the affidavits were to the effect that the subpœna servers "had performed their duty," and that these subpœna servers would come before him or some other person in the office and make the affidavits; that after he had been taking affidavits for some time "there was some talk in the office, and one man kept account of them; he said some day this thing will come in handy, and he kept

an account"; that the rest of the employés laughed at this man, and "we did not think anything of it at the time"; that he kept no memorandum of the affidavits taken; that the fact of seeing this man keep a memorandum, he thought, "showed that some day we might get our money, but I never took any steps in it until I filed this claim." He was asked whether he expected to be paid for these services, and he replied: "I do not know. I was willing to take it if I could get it. I thought we ought to have it." He further testified that he never asked the commissioner to certify any bill for these fees; that "I understood somebody was suing the city, and I waited to see how they made out," and that all of them did the same thing; that this was in the year 1897; that "the fact of this man talking about it gave us an idea that there might be something come up"; that he never asked the commissioner or deputy commissioner to pay the fee for the renewal of his commission, or said anything to either of them about it. The deputy commissioner of jurors testified that he directed the plaintiff to take the affidavits, that "these affidavits were necessary for the conduct of the office," and that it was no part of the duties of the plaintiff or other employés to take the affidavits; but he further testified:

"I was authorized by the commissioner of jurors to assign the various employés of the office to their respective situations, and I had a right to tell Mr. Knox to act as chief clerk and to take these affidavits."

This comprises the material testimony offered upon the trial. It is manifest that the plaintiff's claim is unjust, but it is somewhat difficult to protect the city upon this record. The city first denied the employment of the plaintiff as commissioner of deeds, and this would have left the burden upon him of showing employment by some one authorized to incur the indebtedness on behalf of the city; but subsequently, by admitting the fourth subdivision of the complaint, the city has jeopardized its rights under this denial, and its position was not improved by the admission that its only defense was a waiver, and by its failure to except to the charge that the affidavits were taken at the request of the city through its proper officers. The plain inference is, however, that there was no appropriation for fees of commissioner of deeds during any of this period, and that no employé in the office of the commissioner of jurors received any compensation for such services. It does not appear that the commissioner of jurors or his deputy was required by law to have these affidavits taken, or was authorized to incur liability on the part of the city therefor. For aught that appears, these affidavits, had it been known by the commissioner of jurors or his deputy that fees were to be charged for taking the same, might have been dispensed with. It is also evident that it would have been entirely competent for the commissioner of jurors or his deputy to have required the rendition of these services by the employés of the department as an incident to their salaried positions, and without further compensation. The testimony of the deputy commissioner that the taking of these affidavits was no part of the duties of the plaintiff is a mere legal conclusion, and it was incompetent, and would have been excluded, had objection been taken thereto. The city was entitled to the plaintiff's time and services, and might have required him or any of

the employés to take the affidavits without compensation, or have discharged them on their refusal so to do. It is quite evident that this is the reason that these employés concealed from the commissioner of jurors and his deputy their intention, if any they had, of some day making a claim on account of fees as commissioner of deeds.

When the legislature, by section 55 of the consolidation act (chapter 410, Laws 1882), and section 1549 of the Greater New York charter, permitted officers and employés of the city to hold the office of notary public and commissioner of deeds, we think it was not contemplated that extra compensation should be paid for such services rendered by them during the time which belonged to the city, and for which they were paid by regular salaries. It rather contemplated that the convenient transaction of the business of the municipality required that certain officers and employés should be notaries or commissioners of deeds. While there is some degree of formality with reference to the appointment of a notary public, and the fees for qualifying are something more than nominal, and the number is limited, such is not the case with the office of commissioner of deeds. Commissioners of deeds are appointed by resolution of the municipal bodies, made as matter of course upon request, and the fee for qualifying is only nominal. There is no justice or propriety in allowing city officials or employés additional compensation for services of this character rendered in the city department in connection with city business, and during the time for which they are fully compensated by prescribed salaries.

The case of Merzbach v. Mayor, etc., 163 N. Y. 16, 57 N. E. 96, is not controlling. There an appropriation had been made for the fees of notaries and commissioners of deeds, and the district attorney was authorized to expend that appropriation in payment of such fees where the services of such officials were required by law in the execution of papers connected with the administration of justice in his department; and Merzbach rendered the services on the express understanding that he was to be paid his fees therefor. However, owing to the admissions of the city to which attention has been called, it is doubtful whether any question in this case is open to our review, except the question as to whether the verdict is against the weight of evidence. The order shows that the city moved for a new trial on the ground that the verdict was against the weight of the evidence. We think this motion should have been granted. The plaintiff's own testimony clearly indicates that he rendered these services without any intention of charging the city therefor. If not, then he deliberately concealed such intention for the purpose of misleading his superiors and retaining his position. In neither event should he be permitted to recover.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.